UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TERESA L. LUKE and ANDREW R. LUKE, individually and on behalf of their marital community; and TERESA L. LUKE, as Guardian ad Litem for her minor children, HAYDEN R. LUKE and RILEY A. LUKE,<br><br>Plaintiffs,<br><br>v.<br><br>EMERGENCY ROOMS, P.S., a professional service corporation of Washington state d/b/a FAMILY CARE AND URGENT MEDICAL CLINICS and FAMILY URGENCY CARE CLINICS MINNEHAHA; ROBERT D. THORNTON, M.D.; HOWARD BRUCE GOODWIN, PA-C; JERRY J. FISHER, M.D.; STEPHEN E. PLISKA, M.D.; and DARRELL M. MILLER, M.D.; HI-SCHOOL PHARMACY, INC., a corporation of Washington state d/b/a HI-SCHOOL TRUE VALUE HARDWARE #4600; and MINNEHAHA DRUGS, INC., a corporation of Washington state d/b/a HI-SCHOOL PHARMACY,<br><br>Defendants. | Case No. C04-5759FDB<br><br>ORDER GRANTING MOTION OF HI-SCHOOL PHARMACY, INC. AND MINNEHAHA DRUGS, INC. FOR SUMMARY JUDGMENT |

ORDER - 1

BACKGROUND

This case grows out of an incident on March 7, 2002 when Plaintiff Teresa Luke (Luke) was arrest for DUI in Clark County, Washington.  As a condition of her supervised release, Luke was ordered to take Antabuse, a prescription drug to prevent the patient from drinking by creating an aversive reaction.  Plaintiff then went to the Defendant Emergency Rooms, P.S.'s Minnehaha Clinic on March 12, 2002 for an "Antabuse physical" to obtain the need prescription.  She filled out a history form and was examined by Defendant Physician's Assistant Bruce Goodwin, who wrote a prescription for Antabuse to be administered three times per week.  Luke then went to Defendant Hi-School Pharmacy to have the prescription filled and to take her first dose in the presence of the pharmacist, who enters it in a log for periodic reporting to the court that gave the order.  The prescription was for 12 – 250 mg. tablets, and Luke was to take the drug three times a week.  Anna Theobald, a licensed pharmacist, filled the prescription and gave Luke two information sheets.  Luke recalls instructions therein "not to drink while on the Antabuse and something about like a metallic taste in the mouth. ..." [Eggers Decl., Ex. 4.]

Luke experienced no problems with taking the drug from March 12, 2002 until approximately mid-May when she started experiencing daily nausea and vomiting.  She continued to take the Antabuse and noticed that when she took the drug she had severe stomach cramps.  She said nothing about these symptoms until June 3, 2002 when she reported to the pharmacy to take her Antabuse.  She took her dose that day then reported to the Minnehaha Clinic to be examined for her symptoms.  After several liver tests, Luke was diagnosed with hepatic liver failure and she underwent a liver transplant at Oregon Health Sciences University on July 12, 2002.  The OHSU physicians concluded that her liver failure was from an idiosyncratic reaction to Antabuse.

Defendants Hi-School Pharmacy, Inc. And Minnehaha Drugs, Inc. (Pharmacy) move for summary judgment on Plaintiffs' claims against them.  These claims essentially allege a breach of duty by the pharmacist to warn Luke of the risk of liver damage and the need for liver tests.

ORDER - 2

DISCUSSION

The question of whether a duty exists in a tort case is a question of law. *Tincani v. Inland Empire Zoological Soc.*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994), cited in *Silves v. King*, 93 Wn. App. 873, 970 P.2d 790 (1999). *McKee v. American Home Products*, 113 Wn.2d 701, 782 P.2d 1045 (1989) is the controlling Washington case as to a licensed pharmacists legal duties under tort law to a patient in dispensing prescription drugs. Pharmacists are held to a "very high standard of care" in properly filling lawful prescriptions for their customers. *Id.* at 708. A pharmacist must fill a prescription as directed with the drug prescribed. *Id.* at 710. A pharmacist has "a duty to be alert for patent errors in a prescription, for example: obvious lethal dosages, inadequacies in the instructions, *known* contraindications, or incompatible prescriptions, and to take corrective measures." *Id.* at 715, (emphasis in original). "Contraindications" were explained to mean circumstances under which a drug must never be given, and emphasized that the pharmacist's duty was limited to "known" contraindications, since the pharmacist "typically does not have the patient's complete medical history." *Id.*

The Pharmacy contends that none of these duties was breached, as the drug dispensed was the one prescribed, the dosage was correct, and there were no known contraindications.

Luke contends that the Pharmacy breached its duty in that the prescription had a patent error on its face in the form of inadequate instructions regarding lab tests and the need for baseline and follow-up testing; the Pharmacy failed to correct the error and administered the toxic drug to Luke. This argument fails, as this is not the type of patent error for which a pharmacist is responsible. On the contrary, the duty to warn of dangers associated with a drug runs to the physician who decides which drug fits the individual patient's needs, and it is a matter of medical judgment as to the extent of disclosure made. *Id.* 709, 710. Otherwise, if the prescribing physician did not write out all known side effects, risks, precautions on the prescription slip, absurdly, his instructions would be inadequate and the pharmacist would have to step in and provide all this information.

ORDER - 3

Luke also argues that refills for the Antabuse were to be "PRN" meaning refills were allowed as needed refills were not limited and that this instruction was a patent error as well. This is not a patent error of the type mentioned above. Antabuse is not alleged to be a "caution legend drug" where refills are restricted. While the general statement that the prescribing doctor should monitor the patient on an on-going basis, this does not mean that the pharmacist has a duty to inquire of the doctor whether he really intended to allow refills or to advise him of the need for follow-up studies.

Luke argues that there was no traditional physician-patient relationship here because Luke was ordered to go to the Minnehaha Clinic and that Physician Assistant Goodwin was just the court-recommended conduit to write out the Antabuse prescription and that *McKee*, therefore, does not apply. The Pharmacy points out, however, that while Luke had to participate in the Antabuse program, she was not "ordered" to go to the Family Care and Urgent Medical Clinic, she was informed that this clinic "offered" the service. [Eggers Decl., Ex. 1.] Neither was she "ordered" to go to the Hi-School Pharmacy; P.A. Goodwin told her that she "could" go there. The doctor's office evidently did screening as one in ten court referrals were found to be medically inappropriate candidates for Antabuse. [Decl. re: Thornton Dep. Excerpts, pp. 5-6, 10-11, 12.] Luke's argument that there was no physician-patient relationship because she was ordered to participate in the Antabuse program and that, therefore, the pharmacist had to fill the void is unsupportable.

Luke argues that the fact that Hi-School Pharmacy undertook the duty of monitoring Luke's ingestion of Antabuse required it to follow through with reasonable care even if it did not have the duty in the first place. This argument is not persuasive that by the mere fact that the Antabuse is taken in the pharmacist's presence and noted in a log, the pharmacist's duty was enhanced to necessitate advise about liver function testing. A pharmacist has no duty other than to accurately fill lawful and properly written prescriptions as set forth in the case law cited above.

ORDER - 4

CONCLUSION

The Motion of Defendants Hi-School Pharmacy, Inc. And Minnehaha Drugs, Inc. for summary judgment dismissing Plaintiff's causes of action against them must be granted. Plaintiff's have failed to demonstrate a genuine issue of material fact and Defendants are entitled to judgment as a matter of law as set forth above. NOW, THEREFORE,

IT IS ORDERED: the Motion of Defendants Hi-School Pharmacy, Inc. and Minnehaha Drugs, Inc. For Summary Judgment [Dkt. # 33] is GRANTED and Plaintiffs' causes of action against Hi-School Pharmacy, Inc. and Minnehaha Drugs, Inc. are DISMISSED.

DATED this 31st day of August, 2005.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 5