UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TERESA L. LUKE and ANDREW R. LUKE, individually and on behalf of their marital community; and TERESA L. LUKE, as Guardian ad Litem for her minor children, HAYDEN R. LUKE and RILEY A. LUKE,<br><br>Plaintiffs,<br><br>v.<br><br>EMERGENCY ROOMS, P.S., a professional service corporation of Washington state d/b/a FAMILY CARE AND URGENT MEDICAL CLINICS and FAMILY URGENCY CARE CLINICS MINNEHAHA; ROBERT D. THORNTON, M.D.; HOWARD BRUCE GOODWIN, PA-C; JERRY J. FISHER, M.D.; STEPHEN E. PLISKA, M.D.; and DARRELL M. MILLER, M.D.; HI-SCHOOL PHARMACY, INC., a corporation of Washington state d/b/a HI-SCHOOL TRUE VALUE HARDWARE #4600; and MINNEHAHA DRUGS, INC., a corporation of Washington state d/b/a HI-SCHOOL PHARMACY,<br><br>Defendants. | Case No. C04-5759FDB<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

ORDER - 1

**INTRODUCTION**

This cause of action, here pursuant to diversity jurisdiction, arises from Plaintiff Teresa Luke's prescribed use of Antabuse. Luke was charged with DUI on March 12, 2002 and she entered into a voluntary early release agreement pursuant to which she agreed to take Antabuse, contingent upon passing a screening physical examination. She obtained her examination on March 12, 2002 from Defendant Emergency Rooms, P.S., where she had never been seen before that date. She was examined by Physician's Assistant Bruce Goodwin who determined that there were no findings on physical examination or in Luke's reported history that indicated a need for any additional tests, and he wrote the prescription for Antabuse, which Luke began taking that same day.

She saw Defendant Jerry J. Fisher, M.D. for a tick bite in that same clinic on April 30, 2002. (Luke Dep.) She was treated, was not evaluated or tested related to use of Antabuse, (Fisher Dep.) and Luke reported no liver symptoms at that time (Luke Dep.).

Luke returned to the clinic on June 3, 2002 complaining of symptoms consistent with an insult to her liver. (Luke Dep.). Liver Function Tests (LFT) were performed and the Antabuse was stopped. (Ex. 6) Luke was found to have already suffered significant liver damage, and in July 2002 a liver transplant was performed. (Dr. Thornton dep. Ex. 3.)

Luke asserts that her liver damage resulted from the Antabuse and that Goodwin's initial examination fell below the standard of care. Luke alleges lack of informed consent and negligent failure to evaluate, warn, treat, monitor, etcetera. The parties agree that Washington law applies in this diversity case.

Defendants Dr. Robert Thornton, Dr. Jerry Fisher, Mr. Bruce Goodwin, and Emergency Rooms, P.S. move for summary judgment arguing that Plaintiffs cannot prove that any action or inactions of Defendants caused them harm, that Plaintiffs cannot state an informed consent claim, and that Plaintiffs cannot state any viable claim against Dr. Fisher arising from his entirely unrelated treatment of a tick bite.

ORDER - 2

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**DISCUSSION**

*Health Care Provider Liability*

Under Washington law, RCW 7.70.040 sets forth the "necessary elements of proof that injury resulted from failure to follow accepted standard of care" as follows:

> (1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances;
>
> (2) Such failure was a proximate cause of the injury complained of.

Evidence is sufficient if it supports a "reasonable inference" as to all the elements. *Van Hook v. Anderson*, 64 Wn. App. 353, 358, 824 P.2d 509 (1992). When expert medical testimony is involved, a "reasonable inference" must rise to the level of reasonable medical certainty. *McLaughlin v. Cooke*, 112 Wn.2d 829, 836-37, 774 P.2d 1171 (1989). Proximate cause subdivides into cause in

ORDER - 3

fact, and legal cause. *Gall v. McDonald Indus.*, 84 Wn. App. 194, 926 P.2d 934 (1996). Cause in fact is cause *but for* which the injury would not have happened. Legal cause is cause in fact that warrants legal liability as a matter of social policy. *Gall*, 84 Wn. App. At 207.

Defendants begin their argument by pointing out that Plaintiffs contend that retesting should have been conducted at any time between two and four weeks after Antabuse was started, that is, at any point between March 26 and April 9, 2002. Thereafter, if the test results were normal, no additional test had to be done until the six-month point.. Defendants quote from several of Plaintiff's experts that reflect Plaintiffs' contention. (See Defs.' Opening Br. Pp. 4-6.)

Defendants point to Plaintiffs' expert witnesses' testimony and note that all of Plaintiffs' experts opine that it is more likely than not that abnormalities in Luke's LFTs would have been detected at some unknown and unspecified point between March 26, 2002 and April 9, 2002, and that no witness will testify that it is more likely than not that a problem could have been detected at any particular time within that range, other than the very last day, April 9, 2002. Thus, had Defendants run LFTs at any point before 28 days, Plaintiffs' evidence is that they would have complied with the standard of care, but cannot, and do not, assert that the problem would have been detected. Moreover, the six-month point was well after Luke went to the clinic on June 3, 2002 complaining of symptoms consistent with a liver problem.

Defendants also move for summary judgment on the claim relating to the April 30, 2002 tick bite treatment against Dr. Fisher. Defendants argue that a physician who sees a patient for one condition has no responsibility for entirely unrelated treatment provided by another physician, and it is of no consequence that Dr. Fisher and Mr. Goodwin practice in the same clinic.

Plaintiffs respond reasserting that Defendant Goodwin breached the standard of care by not ordering follow-up liver function tests or informing her of the material risk of liver injury, and that these failures proximately caused Luke's liver damage.

Plaintiffs respond with respect to the claim against Dr. Fisher that his treatment fell below the

ORDER - 4

standard of care because when Luke saw him for treatment of the tick bite, he failed to obtain liver function studies, and her chart demonstrated that no baseline or follow-up liver function tests had been done since the Antabuse was prescribed.

Plaintiffs' response is insufficient to overcome Defendants' showing on summary judgment. Plaintiffs have failed to demonstrate the element of causation. Defendants have demonstrated that there is no genuine issue of material fact and that there is insufficient evidence to support the essential element of causation regarding Plaintiffs' health care provider claims. With respect to the claims against Dr. Fisher, no recognized legal theory is presented by Plaintiffs. Defendants are, therefore, entitled to summary judgment on the claims of health care liability.

***Informed Consent***

The necessary elements of proof for a claim of failure to secure informed consent are set forth in RCW 7.70.050(a)–(d):

> (a) That the health care provider failed to inform the patient of a material fact or facts relating to treatment;
> (b) That the patient consented to the treatment without being aware of or fully informed of such material fact or facts;
> (c) That a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts;
> (d) That the treatment in question proximately caused injury to the patient.

A risk is deemed material and must be disclosed when a reasonable person in the patient's postion probably would attach significance to the specific risk in deciding on treatment. *Miller v. Kennedy*, 11 Wn. App. 272, 287, 522 P.2d 852 (1974), *aff'd per curiam*, 85 Wn.2d 151 (1975). The court in *Villaneuva v. Harrington*, 80 Wn. App. 36, 906 P.2d 374 (1995) described the two-step process used to determine whether a risk is material:

> (1) the scientific nature of the risk must be ascertained (the nature of the harm and the probability of its occurrence), and (2) the trier of fact must then decide whether that probability is a risk which a reasonable patient would consider in deciding on treatment.

*Id.* at 37. The first step of this determination of materiality requires expert testimony, but the second

ORDER - 5

step does not. *Smith v. Shannon*, 100 Wn.2d 26, 33, 666 P.2d 351 (1983). The inapplicability of standard of care testimony as it pertains to informed consent was discussed further by the court in *Miller*:

> There is no need to prove what other doctors might tell their patients in similar circumstances. The doctor has a duty to disclose the material risks as a matter of law. The testimony of medical experts is not necessary to establish the duty to disclose that which the law requires. Once the existence of a risk has been established by expert medical testimony, there is no need to take the next step and also prove by expert medical testimony that the doctor should have told the patient about the risk. Once it has been established by expert medical testimony that a risk existed, the existence of the risk is the patient's business; and it is not for the medical profession to establish a criteria for the dissemination of information to the patient based upon what doctors feel the patient should be told.

11 Wn. App. at 284-86.

Defendants point out that Plaintiffs' experts concede that the incident rate for Luke's idiosyncratic reaction to Antabuse is extremely rare, being between one in 25,000 and one in 40,000. In arguing the materiality issue with respect to such a rare occurrence, Defendants cite *Ruffer v. St. Frances Cabrini Hosp. Of Seattle*, 56 Wash. App. 625, 784 P.2d 1288, *review denied*, 114 Wash.2d 1023, 792 P.2d 535 (1990) where a patient suffered a perforated bowel during a sigmoidoscopy procedure. The undisputed evidence was that perforation was a one in 20,000 to 50,000 risk, and the court held that warning of such a rare occurrence was not required to obtain a patient's informed consent.

Defendants also argue that even if the risk of a rare complication had been imparted to her, Plaintiffs must prove that a reasonably prudent patient under Luke's circumstances would not have consented to treatment. Luke's situation was that her alternative was jail time, and Defendants argue that faced with the one in 25,000 risk of complication, no reasonable patient would have chosen jail time over treatment carrying such a low risk.

Defendants also argue that, in any event, consent was obtained, because when Luke obtained her Antabuse prescription from Emergency Rooms, P.S., she signed a form that advised her of risks

ORDER - 6

of Antabuse, including "the ultimate possibility of unconsciousness and/or death." (Luke dep., Thornton dep. Ex. 3.)

Plaintiffs respond that Defendant Goodwin failed to obtain Luke's informed consent because he did not make her aware of the material risk of hepatitis. Plaintiffs discuss what is known about the side effects of Antabuse and go on to submit expert opinion that while Luke was informed of the possibility of unconsciousness and death, Goodwin did not inform Luke of the risk of liver injury and hepatitis. Plaintiffs argue that it is up to the trier of fact to determine whether the risk no matter how great or small is a risk that a reasonable patient would consider in deciding on treatment.

Under Washington law and the authorities cited, no material risk existed and no warning was required in this case where the risk was 1 in 25,000 to 40,000. Plaintiffs have submitted no evidence to persuade the Court otherwise. Accordingly, Plaintiffs have stated no informed consent claim.

**CONCLUSION**

For the foregoing reasons, there being no genuine issues of material fact, and Defendants being entitled to judgment as a matter of law, Defendants' Motion for Summary Judgment must be granted.

NOW, THEREFORE, IT IS ORDERED: Defendants' Motion for Summary Judgment [Dkt. # 63] is GRANTED and the Clerk may enter Judgment for the remaining defendants.

DATED this 22nd day of December, 2005.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 7